UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X   Case No.:
ANTOINETTE BRUGUERA,

                Plaintiff,

    -against-

CENTRAL AMUSEMENT INTERNATIONAL INC., and
RANDY KAVANAGH, individually,

                Defendants.
-------------------------------------------------------------------X

**COMPLAINT**

Plaintiff Demands a Trial By Jury

Plaintiff, by and through her attorneys, Arcé Law Group, P.C., hereby complains of the Defendants, upon information and belief, as follows:

## INTRODUCTION

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000e et seq. ("Title VII"), the New York State Executive Law, §§ 296 et seq. ("NYSHRL"), the New York City Administrative Code §§ 8-107 *et. seq*. ("NYCHRL"), and the New York Common Law, based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries she has suffered as a result of being discriminated against by her employer on the basis of her sex/gender, together with sexual harassment, creating a hostile work environment, assault and battery, negligent infliction of emotional distress, negligence, retaliation, and unlawful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. 2000e et seq.; 28 U.S.C. §1331, §1343 and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of the State of New York. 28 U.S.C. §1391(b).

5. On or about February 15, 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

6. On or about November 8, 2022, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

7. This action is brought within ninety (90) days of said Notice of Right to Sue Letter

**PARTIES**

8. Plaintiff is a female resident of the State of New York, County of Kings.

9. At all times material, Defendant CENTRAL AMUSEMENT INTERNATIONAL INC. (hereinafter "CAI") was and is a domestic business corporation duly incorporated under the laws of the State of New York.

10. At all times material, Defendant CAI was and is an international amusement park planner, developer, and operator.

11. At all times material, Defendant CAI owned and operated "Luna Park" in Coney Island, New York ("Luna Park"), which was and is located at 1000 Surf Avenue, Brooklyn, New York 11224.

12. At all times material, Defendant RANDY KAVANAGH (hereinafter "KAVANAGH") was and is a resident of the State of New York, County of Kings,

13. At all times material, Defendant KAVANAGH was and is Defendant CAI's "Operations Assistant and Manager."

14. At all times material, Defendant KAVANAGH was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

15. Defendant CAI and Defendant KAVANAGH are hereinafter collectively referred to as "Defendants."

16. At all times material, Plaintiff was an employee of Defendants.

## MATERIAL FACTS

17. At all times material, Luna Park operated on a seasonal calendar from March through November each year.

18. In or around August of 2018, Plaintiff began working for Defendant CAI as a "Seasonal Retail Store Associate," with a pay rate of $15.00 per hour.

19. Within the first several months of her employment, Plaintiff was promoted to "Seasonal Retail Store Lead" for the 2019 season.

20. In or around February of 2020, Hiring Manager, Winnie Newsome, again promoted Plaintiff to "Seasonal Retail Store Lead" for the 2020 season. However, due to COVID-19, Defendant CAI was shut down for the entire season.

21. In or around March of 2021, Plaintiff was promoted again for the upcoming season, this time to "Seasonal Retail Operations Coordinator," with an hourly rate of $18.00.

22. In that role, Plaintiff was responsible for merchandise presentation, signage, pricing, organization, cleanliness, equipment functionality in retail locations, and sales training for the staff.

23. However, days into the 2021 season, Defendant KAVANAGH subjected Plaintiff to unwanted touching.

24. Specifically, on or about March 27, 2021, Plaintiff was in the arcade with Defendant KAVANAGH when she began to smoke out of her vape pen. Defendant KAVANAGH then grabbed Plaintiff's shoulder, aggressively shook her, and stated, "**I wouldn't do that if I were you**." Plaintiff was alarmed and abruptly stepped backwards, but then apologized to him in hopes that it would end the interaction. Plaintiff then began to walk away. However, moments later, Defendant KAVANAGH approached Plaintiff from behind and began patting her on the shoulder while stating, "**Winnie got written up for doing that and I don't want you to get in trouble**."

25. Plaintiff believed that Defendant KAVANAGH's unwanted touching was "creepy" and of a romantic nature.

26. Accordingly, that same day, Plaintiff verbally complained to Guest Services Manager, Tracy Hobbs, about Defendant KAVANAGH grabbing her shoulders and shaking her. Ms. Hobbs assured Plaintiff that she would "take care of things."

27. On or about April 9, 2021, Luna Park opened to the public. However, Plaintiff could not return to work until April 11, 2021, because she was quarantining due to a COVID-19 exposure.

28. On or about April 11, 2021, Plaintiff returned to work. That same day, Ms. Hobbs informed Plaintiff that she (Ms. Hobbs) resigned from her position with Defendants. In Ms. Hobbs' resignation letter to Defendants, amongst other things, she wrote:

> "I also planned to talk to you about an incident [Plaintiff] told me about a few days ago. She said [Defendant KAVANAGH] placed his hand on her shoulder and shook her in a way that made her feel uncomfortable. She said she tried to block it out and didn't want to mention it because she didn't want to 'go there' but trusted me . . ."

29. Defendant KAVANAH then began to retaliate against Plaintiff for complaining about his sexually harassing behavior.

30. For example, *that day*, Plaintiff approached Defendant KAVANAGH to discuss an employee who was previously disciplined. Defendant KAVANAGH became visibly angry and demanded that Plaintiff speak with him privately. When Plaintiff and Defendant KAVANAGH moved to a more remote area with fewer people, Defendant KAVANAGH placed his hands on his hips, stepped towards Plaintiff, and shouted, "**I took care of it**…**What I do with my time here has nothing to do with you**!" Defendant KAVANAGH then continued to encroach upon Plaintiff's personal space by inching closer to her while placing his hands on his hips. Uncomfortable, Plaintiff stated, "**I can't do this with you**" and abruptly walked away.

31. In further retaliation, moments later, Ms. Newsome summoned Plaintiff to her office because Defendant KAVANAGH falsely complained to her about Plaintiff's "attitude" during the conversation that recently transpired, and further complained that Plaintiff did not give him "notice" that she was returning to work.

32. However, this was pretext. Defendant KAVANAGH created the weekly schedule and Plaintiff was scheduled to work on Sunday, April 11, 2021, despite allegedly not having given him "notice" of her return.

33. Nevertheless, Ms. Newsome instructed Plaintiff to clock out and wait to hear from Human Resources ("HR") before she returned to work. Plaintiff was also removed from her scheduled shift to work the next day.

34. Defendant KAVANAGH's actions were intended to create a pretextual paper trail to justify Plaintiff's termination and/or force her to resign.

35. On April 12, 2021, Director of HR, Shanelle Davis called Plaintiff and said that she wanted to meet with her on April 14, 2021 to discuss Plaintiff's complaints about Defendant KAVANAGH's unwanted touching, as well as his "complaints" from the day before.

36. On or about April 14, 2021, Plaintiff met with Ms. Davis. There, Ms. Davis told Plaintiff that she would address her complaints against Defendant KAVANAGH. Moreover, as a condition of returning to work, Plaintiff was also required to sign a disciplinary form for her alleged "attitude" during her last encounter with Defendant KAVANAGH. Plaintiff reluctantly signed the document and was placed back on the schedule the next day.

37. However, Ms. Davis did nothing to address Plaintiff's complaint. As a result, Defendant KAVANAGH continued to retaliate against her.

38. For example, on or about April 15, 2021, when Plaintiff returned to work, Defendant KAVANAGH immediately subjected her to increased hostility whenever she attempted to have work-related discussions with him.

39. Accordingly, Plaintiff called Ms. Davis and requested that she intervene by holding a meeting with her and Defendant KAVANAGH to address the "awkwardness" and "hostility."

40. That day, Ms. Davis met with Plaintiff and Defendant KAVANAGH. When Plaintiff reiterated that she felt retaliated against for complaining about Defendant KAVANAGH's unwanted touching, Ms. Davis dismissively stated, "**It is more of an issue of you using the vapor and him telling you not to use it**. **He touched you on the shoulder to say you are not supposed to do that**. **You're saying it was more a shake**." Plaintiff responded, "Regardless of what I am doing, it still does not give anyone the right to put their hands on me. He put his hands on my shoulder and shook it, like he was to shake another person's hand." Ms. Davis then instructed Plaintiff, "**Do it to me**." Reluctantly, Plaintiff grabbed and

shook Ms. Davis' shoulders, just as Defendant KAVANAGH had done to Plaintiff. Ms. Davis then asked Plaintiff, "**You felt that was intimidating**?" Plaintiff responded, "That was beyond intimidating." Defendant KAVANAGH interrupted and stated, "**It was a friendly gesture**!" When Plaintiff told Defendant KAVANAGH, "It was the second day we met," Ms. Davis intervened and stated, "**He was just trying to get your attention**… **I would not be intimidated if someone did this to me**."

41. Nevertheless, at the end of the meeting, Defendant KAVANAGH apologized to Plaintiff for touching her without her consent. Plaintiff then agreed to continue working with Defendant KAVANAGH professionally and collaboratively.

42. Though Plaintiff hoped that the last meeting resolved her complaint, Defendants continued to retaliate against her.

43. For example, on or about April 23, 2021, Ms. Davis told Plaintiff that her position as a "Retail Operations Coordinator" was no longer needed and moved her to the Health and Safety department as a "Health and Safety Coordinator." Plaintiff had no prior experience or training in Health and Safety and did not feel qualified for the position.

44. When Plaintiff respectfully declined the offer for this role, Ms. Davis told her she was and "at will" employee and that it was either "Health and Safety Coordinator or termination."

45. On or about April 24, 2021, Plaintiff met with Health and Safety Department Manager, Ronald Del Rio. There, Mr. Del Rio stated, "**If they said I recommended you, they lied to you**. **The only reason why you are being transferred is because of the problems you have with** [Defendant KAVANAGH]. [Defendant KAVANAGH] **doesn't want to work with you anymore**." When Plaintiff told Mr. Del Rio that she would take the position because she needed the money, Mr. Del Rio replied, "**If that's the attitude you're going to have then I**

**do not want you on my team**." Then, Mr. Del Rio instructed Plaintiff to consider the role over the weekend, wait for HR to send her an offer letter, and let him know by Monday, April 26, 2021, whether she would formally accept the position.

46. Though Plaintiff left that meeting feeling as though Mr. Del Rio already had a "bad taste in his mouth" towards her due to her complaints about Defendant KAVANAGH, that day, she emailed Ms. Davis requesting an offer letter.

47. On or about April 26, 2021, Ms. Davis replied asking Plaintiff to meet with her to further discuss her new role and other "potential opportunities" within Luna Park. Plaintiff suspected that Ms. Davis did not give her an offer letter because Defendants intended to terminate Plaintiff.

48. Accordingly, that day, Plaintiff emailed President and CEO, Alessandro Zamperla, for further clarification on her employment status. Plaintiff stated, "I'm not sure why I'm being asked to transfer to a different department that I know nothing about. Is transitioning to tickets or guest services not an option?" Mr. Zamperla replied, "[Ms. Davis] will be meeting with you tomorrow to explain in further detail."

49. On or about April 26, 2021, having not yet received an offer letter from Defendants, Plaintiff text messaged Mr. Del Rio, "**Hi I'm waiting for HR to get back to me in changing my offer letter and I haven't heard back**." Mr. Del Rio did not respond.

50. Plaintiff was then left "in limbo" and off the schedule for three days without any information on her employment status.

51. Then, on or about April 29, 2021, Plaintiff requested to meet with Ms. Davis that day and Ms. Davis agreed. During the meeting, Ms. Davis gave Plaintiff the same ultimatum of either working in the Health in Safety Department or facing termination. When Plaintiff reiterated

that she did not want to work in that department due to her lack of experience, Ms. Davis told Plaintiff to remain in a "holding pattern" until after Memorial Day (May 30, 2021), because there were no "current openings" in other departments.

52. On or about May 2, 2021, Plaintiff emailed Ms. Zamperla, "Good morning! I'm looking to find out the status of my employment. I left Human Resources Thursday without a clear answer and I haven't had a schedule in some time. If possible, could you please help me and let me know if I'm still with the company or if I've been let go?" Mr. Zamperla replied, "It is my understanding that you have decided to put your employment on hold."

53. However, this was false. Plaintiff requested to work anywhere besides the Health and Safety Department. It was *Ms. Davis* who placed Plaintiff in a holding pattern due to "no current openings."

54. In fact, on or about May 5, 2021, despite there being "no current openings," Defendant CAI posted a job flyer on its internal server advertising multiple supervisory and management positions including "Facilities Coordinator," "Marketing Manager," "Human Resources Manager," "Assistant Operations Manager(s)," and "Ride Maintenance Supervisor."

55. On or about May 14, 2021, in dire need of income, Plaintiff emailed Ms. Davis asking her when she could return to work. Ms. Davis replied that Plaintiff "voluntarily resigned" because she did not accept the position within the Health and Safety Department.

56. The next day, Plaintiff replied that she never resigned and believed she was slated to return to work after Memorial Day. Ms. Davis did not respond.

57. On or about May 21, 2021, Plaintiff sent Ms. Davis a follow-up email requesting the status of her employment.

58. That day, Ms. Davis replied that she did not immediately respond to Plaintiff's previous email because she wanted to give Plaintiff time to "process things" and reiterated that Plaintiff was no longer employed by Defendants.

59. Then, approximately one hour later, HR Assistant, Christine Nemeth emailed Plaintiff a termination letter with the wrong employee's name stating that this employee was terminated for "Voluntary Resignation."

60. Upon calling Ms. Davis and asking if that letter was intended for her, Plaintiff then received another termination letter, this time correctly naming Plaintiff, dated May 21, 2021, alleging that she was terminated for "Voluntary Resignation."

61. Defendants' actions were intended to create a hostile work environment that no reasonable person would tolerate.

62. Defendants would not have harassed and discriminated against Plaintiff but for her sex/gender.

63. Defendants would not have retaliated against Plaintiff but for her complaint of Defendant KAVANAGH's sexual harassment.

64. As a result of Defendants' actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

65. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered, and continues to suffer, severe emotional distress and physical ailments.

66. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary

losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other nonpecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

67. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts.

68. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## UNDER TITLE VII
## DISCRIMINATION

69. Plaintiff repeats, reiterates, and realleges each and every allegation made in the Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

70. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, for relief based upon the unlawful employment practices of the Defendants. Plaintiff complains of the Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender.

71. Defendants engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff on the basis of her sex/gender, together with creating a hostile work environment and wrongful termination.

## AS A SECOND CAUSE OF ACTION
## UNDER TITLE VII
## **RETALIATION**

72. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

73. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

> "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

74. Defendants engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment, because of her opposition to its unlawful employment practices.

## AS A THIRD CAUSE OF ACTION
## UNDER STATE LAW
## **DISCRIMINATION**

75. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer…because of an individual's …sex/gender… to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

77. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex/gender, together with sexual harassment, creating a hostile work

environment, assault and battery, negligent infliction of emotional distress, negligence, and unlawful termination.

78. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION
## UNDER THE NEW YORK STATE LAW
## RETALIATION

79. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

80. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

81. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to her employer's unlawful employment practices, for complaining about sexual harassment.

## AS A FIFTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## DISCRIMINATION

82. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

83. The New York City Administrative Code Title 8-107(1) provides that: "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived …gender…race… of any person, to refuse to hire or employ or to bar or

to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

84. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, §8-107 (1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of her sex/gender, together with creating a hostile work environment.

### AS A SIXTH CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### RETALIATION

85. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

86. The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

87. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff, including, but not limited to wrongful termination.

### AS A SEVENTH CAUSE OF ACTION
### UNDER STATE LAW
### AIDING AND ABETTING

88. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

89. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

90. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### AS AN EIGHTH CAUSE OF ACTION
### UNDER THE NEW YORK COMMON LAW
### ASSAULT AND BATTERY
### (AS AGAINST DEFENDANT KAVANAGH ONLY)

91. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

92. That the aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness, and recklessness of Defendant KAVANAGH, his agents, servants, and/or employees, suddenly and without provocation did physically assault and battery Plaintiff herein and did cause unwelcome contact, causing the Plaintiff to sustain damages.

### AS A NINTH CAUSE OF ACTION
### UNDER THE NEW YORK COMMON LAW
### NEGLIGENT INFLICTION OF EMOTION DISTRESS

93. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

94. Defendants breached a duty owed directly to Plaintiff that either endangered Plaintiff's physical health and safety and/or caused Plaintiff to fear for her own health and safety. As a result of said conduct, Plaintiff suffered and continues to suffer from severe emotional distress.

## AS A TENTH CAUSE OF ACTION
### UNDER THE NEW YORK COMMON LAW
### NEGLIGENCE
### (AS TO DEFENDANT CAI ONLY)

95. Defendants breached a duty owed directly to Plaintiff that either endangered Plaintiff's physical health and safety and/or caused Plaintiff to fear for her own health and safety. As a result of said conduct, Plaintiff suffered and continues to suffer from severe emotional distress. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

96. Defendant CAI wholly failed to take any or sufficient steps whatsoever to protect Plaintiff from its employees, in that it carelessly, recklessly and negligently hired, trained, supervised, and/or retained incompetent personnel.

97. Defendant CAI negligently trained its employees, not to sexually harass people in their industry, including vendors, corporate partners, and Plaintiff.

98. Defendant CAI, its agents, servants, and employees were negligent, careless and reckless in improper hiring; negligent deployment, negligent supervision, negligent training, retaining incompetent personnel, failing to follow rules, regulations and procedures, and failure to control its agents, servants and/or employees to prevent harm to Plaintiff.

99. As a result of Defendant's negligence, Plaintiff sustained damages.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in an unlawful employment practice prohibited by the New York Common Law on the basis of Plaintiff's sex/gender, together with sexual harassment, creating a hostile work environment, assault and battery, negligent infliction of emotional distress, negligence, retaliation, and unlawful termination.

B. Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: February 3, 2023
      New York, NY

                                    **ARCÉ LAW GROUP, P.C.**
                                    *Attorneys for Plaintiff*

                              By: */s/Max C. Bracero, Esq.*
                                   Max C. Bracero, Esq.
                                   45 Broadway, Suite 430B
                                   New York, NY 10006
                                   212- 248 -0120
                                   max.bracero@arcelawgroup.com